# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Blanche M. Manning | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 09 C 3554 | **DATE** | May 9, 2011 |
| **CASE TITLE** | *Najjar v. Daleh* | | |

**DOCKET ENTRY TEXT:**

The parties' cross-motions for summary judgment are before the court. For the following reasons, Mr. Najjar's motion for summary judgment as to Counts I-III [Dkt. 87] and the defendants' motion for summary judgment as to Counts I, III, and IV [Dkt. 127] are granted in part and denied in part as specified below. In addition, Dkt. 128 is stricken as duplicative of Dkt. 127. This matter is set for a status hearing on June 2, 2011 at 11:00 a.m. At this time, the parties should be prepared to agree to a firm trial date.

■ [ For further details see text below.]

## STATEMENT

*Background*

On December 17, 2007, Pierre Najjar loaned $675,000 to Gus Dahleh, an officer of Mortgage Direct Company, for use in Mortgage Direct's business. In connection with that loan, Gus Dahleh signed a promissory note for $750,000 payable to Mr. Najjar and gave Mr. Najjar a check in the amount of $750,000 dated January 17, 2008, the date the promissory note was due. The promissory note specified that Michigan law would govern any disputes and required Gus Daleh to pay costs and fees if he defaulted. It also stated that Mr. Najjar was loaning $675,000 but that Gus Daleh was responsible for that amount plus a "balloon payment" of $75,000 or the "highest amount allowable under Michigan law" and that the total amount due was $750,000.

Finally, the note provided that:

> in no event shall the amount of interest due hereunder, together with all amounts reserved, charged or taken by [Mr. Najjar] as compensation for fees, services or expenses incidental to the making, negotiation or collection of the loan evidenced hereby, which are deemed to be interest under applicable law, exceed the maximum rate of interest on the unpaid principal

(continued)

| | Courtroom Deputy Initials: | RTH/c |
|---|---|---|

balance hereof allowed from time to time by applicable law. If any sum is collected in excess of the applicable maximum rate of interest, the excess sum collected shall apply to reduce the principal debt or be refunded to [Gus Daleh], at [Mr. Najjar's] option.

Third Amended Complaint, Ex. A (Dkt. 82-2).

On December 17, 2007, Gus Daleh also signed a "business purpose affidavit" stating that he signed the promissory note "for a business purpose (i.e., Mortgage Direct 360 W. Butterfield Elmhurst IL 60121) and the Note shall not be construed as a consumer contract." *Id*. at Dkt. 82-2, at 7. Apparently, however, he spent the funds on himself, including a trip to Las Vegas and on-line trading. When January 17, 2008, rolled around, Mr. Najjar presented the check to the bank to no avail, as Gus Dahleh's account was closed.

Sam Dahleh (Gus' brother) subsequently signed a personal guaranty dated August 10, 2009. *See* Third Amended Complaint, Ex. E (Dkt. 82-2, at 14). In the guaranty, Sam Daleh acknowledged that his "brother, Gus Daleh, and the company Mortgage Direct Company, owe Najjar $750,000 based on a December 17, 2007, Promissory Note that has matured." Sam Daleh also promised to unconditionally guaranty payment of that debt, plus interest and attorneys' fees, in one year. At the end of the document, Sam Daleh signed on two lines, one labeled "Sam Daleh, Individually" and the other labeled "Sam Daleh, as CEO and President of Mortgage Direct Company." Underneath the signature block, Sam Daleh wrote in:

*Note*
This is not final agreement. We (Sam, Gus + Pierre + attorney's [sic] will work out changes by 08/11/09. I (Sam Daleh) signing as guarantor for the money owed to Pierre Najjar.

Sam Daleh then printed and signed his name under the handwritten addition and added the date of August 8, 2009. The parties agree that Sam Daleh made some payments by and through Mortgage Direct to Mr. Najjar.

Mr. Najjar sued Gus Daleh, Sam Daleh, and Mortgage Direct, based on diversity jurisdiction. Counts I and II are claims for breach of contract against Mortgage Direct and Gus Daleh, respectively, based on the promissory note and bounced check. Count III is a claim for breach of contract against Sam Daleh based on the guaranty. In Count IV, Mr. Najjar contends that all three defendants defrauded him because Gus Daleh and Mortgage Direct never intended to repay the $750,000 and Sam Daleh executed the guaranty as a delay tactic.

The parties' cross-motions for summary judgment are before the court. Regrettably, neither side specifies the counts that are the subject of their motions. Mr. Najjar appears to be seeking judgment as to Counts I-III, as his arguments consist of breach of contract theories. The defendants contend that Sam Daleh's guaranty was conditional and thus not binding, Mortgage Direct is not liable for Gus Daleh's debt because it was not a party to Gus Daleh's promissory note and Gus Daleh did not have authority to bind Mortgage Direct, and that the record contains no evidence supporting Mr. Najjar's fraud claims. Thus, the defendants appear to be seeking summary judgment as to Counts I, III, and IV.

*Standard for A Motion For Summary Judgment*

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*,

477 U.S. 317, 322 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Valenti v. Qualex, Inc.*, 970 F.2d 363, 365 (7th Cir. 1992). A court should grant a motion for summary judgment only when the record shows that a reasonable jury could not find for the nonmoving party. *Id*.

*Count I – Breach of the Promissory Note as to Mortgage Direct*

The promissory note states that disputes regarding the note shall be governed by Michigan law. *See* Third Amended Complaint, Ex. A (Dkt. 82-2, at 5). The court will thus apply Michigan law to counts based on the note. In Count I, Mr. Najjar seeks to hold Mortgage Direct liable for the promissory note signed by Gus Daleh. "Gus Daleh" is typed under the signature line of the note, which also states "[t]his note shall be binding upon the Maker and his successors and assigns." Third Amended Complaint, Ex. A (Dkt. 82-2, at 3-5). Mr. Najjar first contends that Mortgage Direct is liable on the note because Gus Daleh signed a separate affidavit stating that he intended to use the money "for a business purpose" in connection with Mortgage Direct.

Michigan follows the widely adopted view that:

In interpreting a contract, it is a court's obligation to determine the intent of the parties by examining the language of the contract according to its plain and ordinary meaning. If the contractual language is unambiguous, courts must interpret and enforce the contract as written because an unambiguous contract reflects the parties' intent as a matter of law. However, if the contractual language is ambiguous, extrinsic evidence can be presented to determine the intent of the parties.

*ABC Paving Co. v. Washtenaw County Road Com'n*, No. 276703, 2008 WL 4605929, at *2 (Mich. App. Oct 2, 2008).

Here, the note was signed by Gus Daleh, and no mention was made of Mortgage Direct. The court declines to add contractual language that the parties did not include. *See id*. Moreover, Gus Daleh's intent to use the money in connection with Mortgage Direct is insufficient to bind Mortgage Direct under the note, as Mortgage Direct was not a party to that note. *RESCO, Inc. v. GLAC Holdings, L.L.C.*, No. 275467, 2008 WL 400679, at *1 (Mich. App. Feb. 14, 2008) ("The general rule is that a contract binds only the parties thereto; a person who is not a party to a contract cannot be held liable thereon") (internal citations omitted). Moreover, the fact that an individual spends money on a corporation's affairs does not mean that corporation is contractually liable to repay those sums to the lender pursuant to a contract it did not sign. *See id*.

Next, even if Gus Daleh was an authorized agent of Mortgage Direct, he signed as "Gus Daleh" with no mention of Mortgage Direct. Thus, the note on its face has no connection to Mortgage Direct. The only possible link to Mortgage Direct is the affidavit executed contemporaneously with the note that states that Gus Daleh intended to use the money "for a business purpose" in connection with Mortgage Direct. As noted above, however, Gus Daleh's intent is insufficient to bind Mortgage Direct under the note.

(continued)

Finally, the fact that Sam Daleh signed the guaranty almost two years after the execution of the promissory note in the capacity of President of Mortgage Direct in an effort to resolve the dispute regarding Gus Daleh's failure to repay the promissory note has no bearing on who is liable under the promissory note. The note was signed by Gus Daleh. The language in the guaranty does not seek to alter any obligations under the note. The effort to impose obligations on Mortgage Direct under the note based on the fact that Sam Daleh signed a subsequent guaranty in his official capacity is simply specious. Thus, Mr. Najjar's motion for summary judgment as to Count I is denied and the court finds that he cannot prevail against Mortgage Direct based on a breach of contract theory as a matter of law.

*Count II – Breach of the Promissory Note as to Gus Daleh*

It is undisputed that Gus Daleh never repaid the monies due under the promissory note. Gus Daleh does not challenge his liability for the principal amount of $750,000. However, he contends that the provisions of the note requiring him to pay interest, costs, and fees are invalid because the balloon payment constitutes interest that is usurious under Michigan law, which allows parties to agree to up to 7% interest per annum. *See* Mich. Comp. Laws § 438.32.

Specifically, the applicable Michigan statute provides:

Any seller or lender or his assigns who enters into any contract or agreement which does not comply with the provisions of this act or charges interest in excess of that allowed by this act is barred from the recovery of any interest, any official fees, delinquency or collection charge, attorney fees or court costs and the borrower or buyer shall be entitled to recover his attorney fees and court costs from the seller, lender or assigns.

*Id*.

Seven percent of $675,000 is $47,250, which is less than the $75,000 difference between $675,000 and $750,000. Mr. Najjar did not seek leave to file a reply brief, despite the fact that this issue was not raised in his cross-motion for summary judgment, so any arguments he might have raised regarding usury are forfeited and the court will proceed without the benefit of his views.

Under Michigan law, "in determining whether a violation of the usury laws has occurred, courts are to look beyond the form of the agreement and consider the substance of the transaction" *Barck v. Grant State Bank*, 357 N.W.2d 872, 873 (Mich. App. 1984). "Interest is compensation allowed by law or fixed by the respective parties for the use or forbearance of money, 'a charge for the loan or forbearance of money,' or a sum paid for the use of money, or for the delay in payment of money." *Town & Country Dodge, Inc v. Dep't of Treasury*, 362 N.W.2d 618, 626 (Mich. 1985) (citations omitted). The $75,000 difference between the $675,000 principal and the amount due represents a sum paid for the use of the principal. *See id*. As such, it is interest and cannot exceed 7% of $675,000, or $47,250. $75,000 is greater than $47,250. Accordingly, it is a usurious interest rate.

(continued)

**STATEMENT**

This means that Mr. Najjar cannot recover "any interest, any official fees, delinquency or collection charge, attorney fees or court costs" in connection with his breach of contract claim based on Gus Daleh's failure to repay the principal. *See* Mich. Comp. Laws § 438.32; *see also Lawsuit Financial, L.L.C. v. Curry*, 683 N.W.2d 233, 240 (Mich. App. 2004) (demand to pay $887,500 given principal amount of $177,500 was usurious so the "plaintiff [was] barred by statute from recovering any interest, fees, late charges, court costs, or attorney fees"). In addition, Gus Daleh is entitled to attorneys' fees and costs incurred in connection with this claim only. Mr. Najjar's motion for summary judgment as to Count II is, therefore, granted in part and denied in part, and judgment is entered against Gus Daleh in the amount of $675,000. With respect to fees, the parties shall comply with Local Rule 54.3, and a fee petition shall be filed by July 24, 2011.

*Count III – Breach of the Guaranty as to Sam Daleh*

The guaranty states that it governed by Illinois law. The defendants contend that relief is available under the guaranty because Sam Daleh added language unequivocally demonstrating that it was not a final document. Specifically, as noted above, he added the language:

*Note*
This is not final agreement. We (Sam, Gus + Pierre + attorney's [sic] will work out changes by 08/11/09. I (Sam Daleh) signing as guarantor for the money owed to Pierre Najjar.

The parties agree that despite the conditional language added by Sam Daleh, he made some payments on behalf of Mortgage Direct to Mr. Najjar. Mr. Najjar appears to be arguing that even if the guaranty was not final at the time Sam Daleh signed it due to the addition of the words "[t]his is not final agreement," the subsequent payments constitute partial performance that ratified the guaranty and made it final and binding.

The court finds that the guaranty itself is ambiguous. It says both that it is a final binding obligation and that it is not final and binding. To determine the parties' intentions, the court may consider parol evidence, including other documents and evidence of the parties' subsequent conduct. *See Pearson Bros. Co., Inc. v. Pearson*, 113 B.R. 469, 796 (C.D. Ill. 1990). Accordingly, neither side is entitled to summary judgment as to Count III.

*Count IV – Fraud*

The defendants contend that Gus Daleh's failure to repay the loan was a failed business transaction, while Mr. Najjar characterizes his involvement with the Dalehs and Mortgage Direct as part of a plot to defraud him and stresses that Gus Daleh spent the loan proceeds on a Vegas trip and on-line trading instead of the promised business purposes.

Although unremarked by the parties, under Illinois law, "[t]he victim of a fraud may elect one of two remedies. He may choose to keep the benefit of his bargain, leaving the contract in place and recovering damages for his injuries. In the alternative, he may elect rescission and restitution. The injured party may seek, but not obtain, both remedies; entry of final judgment granting one remedy precludes the award of the other." *In re Green*, 241 B.R. 187, 199 (Bkrtcy. N.D. Ill. 1999) (internal citations omitted). Thus, Mr. Najjar will need to elect to pursue either a fraud or breach of contract claim at the appropriate time.

(continued)

With that in mind, "[t]he elements of a claim for fraudulent misrepresentation, also referred to as common law fraud, are: (1) a false statement or omission of material fact; (2) knowledge or belief of the falsity by the party making it; (3) intention to induce the other party to act; (4) action by the other party in reliance on the truth of the statements; and (5) damage to the other party resulting from such reliance." *Weidner v. Karlin*, 932 N.E.2d 602, 605 (Ill. App. 2010), *citing Bd. of Educ. of City of Chicago v. A, C & S, Inc.*, 546 N.E.2d 580, 591 (Ill. 1989). The court finds that Mr. Najjar has pointed to enough suspicious conduct to proceed to trial. The trier of fact may accept Gus Daleh's position (an issue upon which the court expresses no opinion) but at the summary judgment stage, the court cannot pick and choose between competing versions of the facts.

With respect to Sam Daleh and Mortgage Direct, Mr. Najjar's brief focuses exclusively on Gus Daleh. *See* Dkt. 88 at 13-16. Thus, any arguments regarding Sam Daleh and Mortgage Direct are forfeited. Accordingly, the defendants' motion for summary judgment on Count IV is denied as to Gus Daleh but granted as to Sam Daleh and Mortgage Direct.

*Conclusion*

Mr. Najjar's motion for summary judgment as to Counts I-III [Dkt. 87] and the defendants' motion for summary judgment as to Counts I, III, and IV [Dkt. 127] are granted in part and denied in part. Specifically:

(1) Mr. Najjar's motion for summary judgment as to Count I is denied and judgment is entered in favor of Mortgage Direct.

(2) Mr. Najjar's motion for summary judgment as to Count II is granted in part and denied in part. Judgment is entered against Gus Daleh in the amount of $675,000. In addition, Gus Daleh is entitled to attorneys' fees and costs incurred in connection with Count II only. With respect to the amount of fees, the parties shall comply with Local Rule 54.3, and a fee petition shall be filed by July 24, 2011. The parties are very strongly encouraged to reach agreement.

(3) The parties' cross-motions for summary judgment as to Count III are denied.

(4) The defendants' motion for summary judgment on Count IV is denied as to Gus Daleh but granted as to Sam Daleh and Mortgage Direct.